**Jon P. Stride**, OSB No. 90388
Email:  jons@tonkon.com
TONKON TORP LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR  97204-2099
Direct Dial:    503.802.2034
Direct Fax:    503.972.3734

**Adrian M. Pruetz**, admitted pro hac vice
Email:  adrianpruetz@quinnemanuel.com
**Scott B. Kidman**, admitted pro hac vice
Email:  scottkidman@quinnemanuel.com
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
Telephone:    213.443.3000
Fax:              213.443.3100

   Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NIKE, INC., an Oregon corporation,** | Civil No. CV05-541 RE |
| Plaintiff, | **PLAINTIFF NIKE, INC.'S OPPOSITION TO DEFENDANT ADIDAS AMERICA, INC.'S MOTION TO DISMISS** |
| vs. | |
| **ADIDAS AMERICA, INC., a Delaware corporation; and ADIDAS-SALOMON AG, a German corporation**, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**Preliminary Statement**

Last year, adidas America threatened Nike with litigation over two stripe apparel in Germany and, shortly afterwards, its parent sued Nike there and in the Netherlands.  Nike then inquired about the geographic scope of adidas's contention that two stripe designs are allegedly "confusingly similar" and "detrimental to the ... repute" of its Three-Stripe Mark.  adidas responded that it sued where it found Nike's apparel on sale.  adidas America must know by now that Nike also sells apparel in the United States bearing the same two stripe configuration that is at issue in Europe.  Meanwhile, adidas America and its parent have engaged in an aggressive campaign of trademark enforcement litigation in this district against parties employing two stripe designs.

Thus, Nike has a reasonable apprehension that it will be sued in the U.S. over its ongoing use of two stripes on apparel and that adidas America will be a party to that litigation.  adidas America, on the other hand, has been careful not to offer any assurance that it will refrain from suit.  Instead, the moving papers offer only a potpourri of half-truths intended to cloud what the Court already knows--that adidas America is its parent's domestic trademark enforcement agent.

adidas America tenders a declarant who claims to be with an entity described as adidas International, Inc., despite having reported to the Oregon State Bar that she is employed by adidas America.  The declarant then incorrectly represents that adidas's European litigation originated with communications sent by her "predecessor" at adidas International, when in fact the threatening email was sent from adidas America's Portland office by an individual well known to Nike as an adidas America employee and who still holds himself out to the public as having been affiliated with that defendant.  Indeed, the email communication attached to the declaration states that it was sent from "across the river" and has the email address

"adidasus.com."  adidas America even goes so far as to make the incredible statement that it has no interest in the Three-Stripe Mark.  Notwithstanding that representation, the moving papers clearly reference "*its* Three-Stripe Mark," and adidas America is co-plaintiff in every trademark suit its parent has brought in this district.  In short, adidas America's position that it has nothing to do with its parent's worldwide trademark enforcement campaign against Nike and third-parties cannot be taken seriously.

Although adidas America clearly would prefer to choose the time and place of its infringement suit against Nike, that is precisely the behavior the declaratory relief statute is supposed to address.  Nike cannot be expected to continue to manufacture the items adidas already has challenged under the apprehension of an infringement suit and the risk of mounting damages if liability attached.  Instead, Nike requires--and is entitled to--the immediate certainty that only a declaration of rights will afford.

**Argument**

I.  **DEFENDANTS HAVE DEMONSTRATED AN INTENT TO SUE NIKE IN THE UNITED STATES FOR INFRINGEMENT AND DILUTION OF THEIR THREE-STRIPE MARK**

The Declaratory Judgment Act grants courts the authority to "declare the rights" of parties to a "case of actual controversy."  28 U.S.C. § 2201.  One significant purpose of the Act is to "relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never" by permitting a party "to forestall the accrual of potential damages by suing for a declaratory judgment, once the

adverse positions have crystallized and the conflict of interests is real and immediate." <u>Societe de Conditionnement v. Hunter Eng. Co.</u>, 655 F.2d 938, 943 (9th Cir. 1981).

As the Ninth Circuit has explained, there is no "precise test for determining in every case" whether there is an actual controversy. <u>Id.</u> at 942. The requirements of the Declaratory Judgment Act are satisfied "if the plaintiff has a real and reasonable apprehension that he will be subject to liability." <u>Chesebrough-Pond's, Inc. v. Faberge, Inc.</u>, 666 F.2d 393, 396 (9th Cir. 1982) (quoting <u>Societe de Conditionnement</u>, 655 F.2d at 944). If the plaintiff is engaged in the ongoing manufacture of the items to which the defendant claims trademark rights, as Nike is, the showing of real and reasonable apprehension beyond the manufacture of the item "need not be substantial." <u>Id.</u> See also <u>Grafon Corp. v. Hausermann</u>, 602 F.2d 781, 783-84 (7th Cir. 1979) ("a course of conduct on the part of the defendant which would cause a reasonable man to fear that he or his customers face an infringement suit or the threat of one is sufficient").

The determination of whether a threat of liability is reasonable is judged from the point of view of the plaintiff, Nike. <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1556 (9th Cir. 1990) (court must apply apprehension standard "with a flexibility that is oriented to the reasonable perceptions of the plaintiff"); <u>Chesebrough-Pond's</u>, 666 F.2d at 396.

As adidas America admits, there need not be any explicit, or even substantial, threat of actual suit by a defendant to create an actual controversy. Motion at 5; <u>Chesebrough-Pond's</u>, 666 F.2d at 397 ("although there was no actual threat" by defendant "that it would sue," plaintiff "had a reasonable apprehension that such action would be taken."); <u>Societe de Conditionnement</u>, 655 F.2d at 944-45 (rejecting argument that there must be "actual threat of litigation" and noting there may be reasonable and real apprehension "without a threat").

As demonstrated below, Nike has a real and reasonable apprehension that it will be subject to suit over apparel bearing two-stripe designs and that adidas America will be a party to that lawsuit.

PAGE 4 -    PLAINTIFF NIKE, INC.'S OPPOSITION TO DEFENDANT ADIDAS AMERICA, INC.'S
            MOTION TO DISMISS                                                    5362/656689.1

A.      **Defendants' Campaign of Litigation Threatened Nike With Suit**

       1.      **adidas's European Litigation Against Nike Threatened It With Suit In the U.S.**

adidas America does not contend that declaratory relief is inappropriate as to its corporate parent, adidas-Salomon AG.[1]  Nor could it.  adidas-Salomon already has brought suit against Nike in Germany and the Netherlands regarding "the issue of whether two stripes as applied to apparel infringe the Three-Stripe Mark."  Declaration of Vanessa L. Backman ("Backman Dec."), ¶ 5.  When Nike asked adidas to define the geographic scope of its claim that Nike's two-stripe designs allegedly violate adidas's intellectual property rights, adidas responded that it sued in Germany and the Netherlands "because that is where we have identified the products on sale."  Declaration of Kenneth W. Kwartler ("Kwartler Dec."), ¶¶ 10-11 & Exh. 4; Backman Dec., Exh. 3 at p. 1.  Accordingly, it is reasonable for Nike to believe adidas will bring suit in the U.S. because Nike sells apparel here bearing *the same two-stripe configuration* as the apparel that is at issue in Europe.  Declaration of Peter Kolsky ("Kolsky Dec."), ¶¶ 4-5; Kwartler Dec., ¶¶ 3-4 & 12-13.

      The legal framework of the foreign and domestic trademark claims is similar.  In advance of adidas-Salomon's litigation brought in the Netherlands, its subsidiary wrote Nike on April 27, 2004, that Nike's two-stripe apparel was allegedly "confusingly similar" to the

---

[1] adidas America disingenuously reports that Nike has not yet effected service of the complaint on adidas-Salomon.  Motion at 1 n.1. That is because adidas-Salomon has refused to accept service, using its status as a foreign national to force Nike to effect service through the onerous procedures of the Hague Convention.  Declaration of Adrian M. Pruetz ("Pruetz Dec."), ¶¶ 3-4 & Exhs. 1-3.  Given that adidas-Salomon repeatedly has availed itself, and continues to avail itself, of the privilege of enforcing its alleged intellectual property rights in this forum, adidas-Salomon's conduct is inappropriate gamesmanship intended to obstruct the progress of this case.

PAGE 5 -   PLAINTIFF NIKE, INC.'S OPPOSITION TO DEFENDANT ADIDAS AMERICA, INC.'S
          MOTION TO DISMISS                                                                           5362/656689.1

Three-Stripe Mark and "detrimental to the ... repute" of the Three-Stripe Mark.  Backman Dec., Exh. 2 at 1.  It goes without saying that "confusing similarity" and harm to reputation are the hallmarks of infringement and dilution claims under the Lanham Act.

Accordingly, based on adidas's European litigation *alone*, Nike reasonably apprehended that it would be sued in the United States for selling two stripe apparel.  Kolsky Dec., ¶ 7; see also Teva Pharm. USA, Inc. v. Abbot Labs., 301 F. Supp. 2d 819, 822 (N.D. Ill. 2004) (Canadian proceeding against the plaintiff by the defendant reasonably led the plaintiff to fear suit in the United States); Electro Med. Sys. S.A. v. Cooper Lasersonics, Inc., 617 F. Supp. 1036, 1038 (N.D. Ill. 1985) (existence of prior infringement actions in foreign forums based on corresponding foreign patents and same products at issue in the current suit was a sufficient basis for reasonable apprehension of suit in the United States); Ethicon, Inc. v. American Cyanamid Co., 369 F. Supp. 934, 937 (D.N.J. 1973) ("The suit in Britain constitutes ample notice both to plaintiff and to those with whom plaintiff does business, of an existing controversy, despite the fact that the British suit involves a nominally different company and a different patent.").

adidas America cites O'Hagins, Inc. v. M5 Steel Mfg., Inc., 276 F. Supp. 2d 1020, 1025-26 (N.D. Cal. 2003), for the proposition that previous litigation between the parties will not support a declaratory judgment action.  Motion at 7.  In O'Hagins, the court held that a lawsuit between the parties over *eight years earlier* was too remote to create a reasonable apprehension of suit.  Here, of course, defendants' campaign of litigation against Nike on the same two-stripe configuration it manufactures in the United States *is continuing* in Europe.  See, e.g., Backman Dec., ¶ 9.  And, such recent litigation between parties does give rise to a reasonable apprehension.  See Premo Pharm. Labs. v. Pfizer, Inc., 212 U.S.P.Q. 681, 682 (S.D.N.Y. 1981) (holding that two previous suits filed by the defendant against the plaintiff in the same year that it filed for declaratory relief created a reasonable apprehension of suit; "[t]o deny that a 'case or

controversy' exists in this situation is to 'ignore the realities of business life.'") (quoting Muller v. Olin Mathieson Chem. Corp., 404 F.2d 501, 505 (2d Cir. 1968)).

### 2.     adidas's Litigation In This District Threatened Nike With Suit

In addition to the suits against Nike in Europe, defendants have brought numerous actions in this judicial district against third-parties to enforce their rights in the Three-Stripe Mark.  See Nike's Request for Judicial Notice.  adidas America seeks to minimize the threatening impact of that enforcement campaign by claiming that it and adidas-Salomon have brought no action in the United States concerning the use of two stripes on apparel.  Motion at 3.  However, as both Nike and the trade press recognized, the Polo Ralph Lauren matter (Case No. CV04-1124) concerned a jacket with two white stripes.[2]  See, e.g., Pruetz Dec., ¶ 10 & Exh. 9.

Moreover, adidas America, along with adidas-Salomon, have claimed in several recent lawsuits filed in the United States that two stripes on footwear infringes and dilutes their Three-Stripe Mark.[3]  For example, adidas recently represented to the district court in the Central District of California that it possessed evidence which "demonstrates beyond a shadow of a doubt that ACI's two-stripe shoes infringe and dilute adidas's famous Three-Stripe Mark . . .."  Nike's Request for Judicial Notice, Exh. 5 at p. 2.

---

[2]  adidas America suggests that the Ralph Lauren lawsuit involved only three black stripes, not two white stripes.  Motion at 3.  However, in other cases where they sued over the use of three stripes, adidas America alleged the defendant was using three-stripes.  See Nike's Request for Judicial Notice, Exh. 2 at ¶ 20.  Notably, in the Ralph Lauren complaint, they did not.  Id., Exh. 1 at ¶ 19.

[3]  For example:  (1) in this district, adidas America, Inc., et al. v. United States Polo Association and Properties, Inc., Case No. CV04-216; and (2) in the Central District of California, ACI International, Inc. v. Adidas-Salomon AG, et al., CV04-9730.  See Nike's Request for Judicial Notice, Exh. 3 at ¶ 22; & Exh. 5 at p. 2.

PAGE 7 -   PLAINTIFF NIKE, INC.'S OPPOSITION TO DEFENDANT ADIDAS AMERICA, INC.'S
                    MOTION TO DISMISS                                                                                   5362/656689.1

Defendants' numerous actions in the United States to enforce their Three-Stripe Mark against third-parties using multiple stripes on footwear and apparel bolster Nike's reasonable apprehension that it will be subjected to suit at a time and place convenient to defendants.  See, e.g., Arrowhead Indus., 846 F.2d at 738 ("[A]n apprehension may arise from circumstances which include no communication by defendant to plaintiff.  …  The law does not require enterprises to keep their heads in the sand while a patentee picks them off one by one and at its leisure."); Dr. Reddy's Labs., 2002 WL 31059289, at * 7 ("threats of infringement suits against an entire product industry can create reasonable apprehension among all individual members of that industry").

### B. adidas America Fails to Provide Any Assurance That It Has No Intention to Sue Nike

The extensive and ongoing litigation campaign described above belies adidas America's contention that there has been "a clear restraint by adidas in enforcing its trademark rights."  Motion at 7.  adidas America, for its part, does nothing to dispel Nike's fear that it will be targeted next.  For example, **adidas America fails to attest that it has no intention of suing Nike**.  See Hal Roach Studios, 896 F. 2d at 1556 (finding relevant "that Hal Roach Studios has not indicated to Feiner & Co. that it will *not* institute an infringement action") (emphasis in original).  Instead, adidas America's *counsel* proffers only carefully worded statements calculated to give Nike no assurance.  adidas America's *counsel* states that "the fact that adidas-Salomon AG elected to sue Nike's subsidiaries in certain European markets *does not necessarily* mean that adidas America would likewise elect to sue Nike in the United States."  Motion at 2 n.2 (emphasis added).  adidas America's *counsel* further reports that it "has given no indication

whatsoever that it *presently intends* to pursue an infringement action" against Nike.[4]  Motion at 6 (emphasis added).  However, adidas America has submitted no *evidence* of any such "present intention" not to sue.  For example, nothing in the Backman Declaration addresses adidas America's intent.

Even if the moving papers had contained such evidence, Nike need not wait until adidas America's "present intent" leads it to actually bring suit.  See, e.g., EMC Corp. v. Norand Corp., 89 F.3d 807, 811 (Fed. Cir. 1996) ("when the patentee takes steps that create a reasonable apprehension that he will seek redress through the courts, the alleged infringer is not required to wait for the patentee to decide when and where to sue, but can take the initiative and seek declaratory relief.").  Nike continues to market two-stripe apparel in the United States that, if infringing under U.S. law, will only subject Nike to mounting damages.  That is precisely what the declaratory judgment statute is designed to prevent.  See Algrant v. Evergreen Valley Nurseries Ltd. Partnership, 126 F.3d 178, 189 (3d Cir. 1997) (quoting Travelers Ins. Co. v. Davis, 490 F.2d 536, 543 (3d Cir. 1974)) (declaratory relief is necessary "'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued'").

C.  **adidas America Is adidas-Salomon's Domestic Enforcement Agent**

Rather than provide assurance that it will refrain from suing Nike in the U.S. over apparel bearing two stripes, adidas America instead attempts to convince the Court that it has nothing at all to do with its parent's trademark enforcement efforts.  adidas America goes so far as to claim that it "has never even communicated with, much less threatened to sue, Nike

---

[4]  During the brief "meet and confer" pursuant to Local Rule 7.1(a) conducted by adidas America *late on the afternoon this motion was brought*, adidas America's counsel again reiterated only that there was no "present intent" to sue.  Pruetz Dec., ¶ 2.

PAGE 9 -   PLAINTIFF NIKE, INC.'S OPPOSITION TO DEFENDANT ADIDAS AMERICA, INC.'S
                MOTION TO DISMISS                                                           5362/656689.1

regarding its use of two stripes on apparel." Motion at 1. The demonstrably inaccurate declaration on which that contention is based must be disregarded. The email communication submitted with adidas America's moving papers, threatening its parent's German action, *came from adidas America*.

Specifically, on February 27, 2004, Nike's in-house counsel received an email message sent by adidas America's in-house counsel, Michael Heilbronner. Backman Dec., ¶ 6 & Exh. 1 at p. 2. adidas America provides sworn testimony that Mr. Heilbronner was employed by a different adidas entity, adidas International. Id., ¶ 6. However, at the time the email was sent, Mr. Heilbronner was well known to Nike and others in the Portland legal community as in-house counsel for adidas America. Kwartler Dec., ¶¶ 6-7. Indeed, Mr. Heilbronner's email message was sent from adidas America's Portland offices, as reflected by Mr. Heilbronner's greeting "I hope all is well across the river," and his email address: "adidasus.com." Backman Dec., Exh. 1 at p. 2. adidas America also conceals from the Court the fact that Mr. Heilbronner had written to Nike on prior occasions *on adidas America letterhead* to threaten trademark infringement litigation over Nike's use of four stripes on footwear. Kwartler Dec., ¶ 8 & Exh. 2.

Mr. Heilbronner, an adjunct professor of law at Lewis & Clark Law School, even describes himself on the school's website as Associate Counsel of adidas America. Pruetz Dec., Exh. 7. Likewise, the 2004-2005 membership directory of the International Trademark Association lists Mr. Heilbronner as Associate Counsel, Intellectual Property for adidas America. Id., Exh. 8. Accordingly, adidas-Salomon's European suits originated with a threat from adidas America sent from within this district.

adidas America also disingenuously attempts to distance itself from the widespread trademark enforcement activity in this district by asserting that it is "not the owner of any registered trademarks and does not own the Three-Stripe Mark." Motion at 2. However, its moving papers admit that "***adidas America*** has filed several actions in this District against third

parties related to enforcement of *its* Three-Stripe Mark on apparel." Motion at 3 (emphasis added). In those numerous suits, adidas America and adidas-Salomon reference the Three-Stripe Mark as being owned by them collectively. See, e.g., Nike's Request for Judicial Notice, Exhs. 1 at ¶ 13 (referencing "Plaintiffs' Three-Stripe Mark") & 2 at ¶ 14 (same). Likewise, in the above-referenced action being litigated in the United States District Court for the Central District of California, adidas America has filed a declaration claiming to have rights in the Three-Stripe Mark. Id., Exh. 5 at ¶¶ 1 & 5. adidas America cannot hide from the fact that it is the domestic agent for adidas-Salomon's trademark enforcement efforts.

       adidas America nonetheless submits a declaration that purports to be from an employee of adidas International, Inc., claiming that adidas International oversees and manages adidas-Salomon's "intellectual property protection and enforcement program within the United States." See Backman Dec., ¶ 1. The record, however, speaks for itself. adidas International is not a named plaintiff in *any* of adidas's enforcement actions before this Court, while adidas America is a co-plaintiff with adidas-Salomon in every one. Furthermore, the declarant, Vanessa Backman, is herself an employee of adidas America, as she reported to the Oregon State Bar. See Pruetz Dec., Exh. 4.[5]

       Also worthy of note is that adidas America and adidas International evidently operate as one, sharing the same Portland premises and the same officers and employees. See Pruetz Dec., Exh. 6. At a minimum, the adidas entities are so intertwined that Nike can reasonably apprehend that adidas America and adidas International will bring suit, along with adidas-Salomon, to enforce purported rights in the Three-Stripe Mark.

---

[5] Ms. Backman also claims to be an employee of adidas-Salomon, as reflected by her business card. Pruetz Dec., Exh. 5.

## II. NIKE'S COMPLAINT DOES NOT LACK PARTICULARITY

As an afterthought, adidas America claims that Nike's complaint lacks sufficient "particularity." Motion at 8. Initially, that cannot form the basis of any request for relief because it is not reflected in the Notice of Motion. Likewise, adidas America failed to raise any such issue during the perfunctory meet and confer it conducted as it was concurrently filing its motion. Pruetz Dec., ¶ 2.

In any event, adidas America's contention has no merit. Both adidas America and its parent, adidas-Salomon, are well aware of the two-stripe apparel that is at issue given that they have brought several actions against Nike in Europe on the subject. Nike's Complaint also explains that it seeks a declaration that its two-stripe apparel does not infringe or dilute the Three-Stripe Mark, and provides an example of apparel with which Nike is concerned. Complaint, ¶¶ 14, 27.

## Conclusion

For the foregoing reasons, Nike respectfully requests that adidas America's motion be denied in its entirety.

DATED: May 24, 2005

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By      /s/ Adrian M. Pruetz
    Adrian M. Pruetz, admitted *pro hac vice*
    Email: adrianpruetz@quinnemanuel.com
    Telephone:   213.443.3000
    Fax:              213.443.3100

Attorneys for Plaintiff Nike, Inc.