**Stephen M. Feldman, OSB No. 93267**; sfeldman@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: (503) 727-2000
Facsimile: (503) 727-2222

    Attorneys for Defendants

**Jerre B. Swann**; jswann@kilpatrickstockton.com
**William H. Brewster**; bbrewster@kilpatrickstockton.com
**R. Charles Henn Jr.**; chenn@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

    Of Counsel for Defendants


# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| NIKE, INC., <br><br>              Plaintiff, <br><br>     v. <br><br> ADIDAS AMERICA, INC. and **ADIDAS-SALOMON AG**, <br><br>              Defendants. | NO. CV05-541 RE <br><br> **DECLARATION OF TIM BEHEAN** <br> In Support of Defendant adidas-Salomon AG's Motion to Dismiss |

1-   DECLARATION OF TIM BEHEAN

[21184-0050/PA052030.049]

I, Tim Behean, declare as follows:

1.     My full name is Timothy George James Behean, and I am known as Tim Behean. I am Associate General Counsel, Intellectual Property, for adidas International Marketing B.V., which is based in the Netherlands and I have held that position since April 1997. I am British, and a qualified attorney under the UK legal system (a "solicitor"). I qualified as a solicitor in 1983. adidas International Marketing B.V. is a wholly-owned subsidiary of defendant adidas-Salomon AG ("adidas-Salomon") and a corporate affiliate of defendant adidas America, Inc. ("adidas America"). I am responsible for all adidas group ("adidas") intellectual property matters globally, including the filing, prosecution, maintenance and enforcement of adidas trademarks, patents and other intellectual property.

2.     I am over the age of twenty-one, I am competent to make this Declaration, and the facts set forth in this Declaration are based on my personal knowledge and on documents maintained by adidas in the ordinary course of business.

3.     adidas-Salomon owns numerous trademarks, registered and at common law, in the United States, Europe and elsewhere. Among these trademarks is the well known Three-Stripe Mark, a mark incorporating three parallel stripes of approximately equal width and spacing applied in certain positions to footwear and apparel, amongst other products. adidas-Salomon is the owner of, *inter alia*, a federal trademark registration, Reg. No. 1,815,956, issued by the United States Patent and Trademark Office on January 11, 1994, for the Three-Stripe Mark, for "athletic footwear." adidas-Salomon also owns numerous additional trademark registrations for the Three-Stripe Mark covering footwear and various items of apparel including U.S. Reg. Nos. 870,136, 961,353, 1,833,868, 2,016,963, 2,058,619, and 2,278,589.

4.     The Three-Stripe Mark was created in 1949 and first used for footwear in that year, and has been continuously used by adidas for footwear since then. The Three-Stripe Mark was first used on apparel in 1967 and has been continuously used by adidas for apparel since then. In the U.S., adidas has extensively and continuously used and promoted the Three-Stripe

2-   DECLARATION OF TIM BEHEAN

PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
PORTLAND, OREGON 97209-4128
(503) 727-2000
(503) 727-2222

Mark in connection with footwear and apparel for over four decades. In recent years, annual sales of products bearing the Three-Stripe Mark have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States specifically. The Three-Stripe Mark has achieved international fame and tremendous public recognition, and the purchasing public around the world has come to associate the Three-Stripe Mark with adidas.

5.    To the best of my knowledge, adidas has never approached, threatened, or discussed with Nike the issue of whether the use by Nike of any two-stripe design on apparel in the United States infringes the Three-Stripe Mark. Other than the present litigation, there are no pending legal proceedings of any kind in the United States between adidas and Nike (although there are U.S. proceedings in which adidas and Nike are co-plaintiffs in trademark counterfeiting cases).

6.    There currently is pending litigation in Germany and the Netherlands between adidas-Salomon and Nike subsidiaries concerning the issue of whether apparel products bearing particular two-stripe markings infringe the Three-Stripe Mark under the laws of those countries.

7.    The origin of the German lawsuit dates back to February 2004, when a then member of my department at adidas International, Inc. (Michael Heilbronner) contacted counsel for Nike via email to discuss Nike's use of a particular two-stripe marking on women's athletic pants which Nike were offering for sale in Germany. A true and correct copy of the initial email exchange from February and March 2004 is attached hereto as **Exhibit 1**. We instructed our outside counsel in Germany to send a formal letter of complaint to Nike when Nike's trademark counsel, Ken Kwartler, did not reply substantively to the correspondence from Michael Heilbronner.

8.    The Netherlands-based dispute originated in an April-May 2004 exchange of correspondence between Nike and Aline Olie, who is a member of my department at adidas International Marketing B.V. True and correct copies of these letters are attached hereto as **Exhibit 2**.

3-   DECLARATION OF TIM BEHEAN

PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
PORTLAND, OREGON 97209-4128
(503) 727-2000
(503) 727-2222

[21184-0050/PA052030.049]

9.      On June 17, 2004, adidas-Salomon reluctantly began litigation in Germany and the Netherlands against subsidiaries of Nike in an attempt to resolve these disputes. Even following these filings, however, the parties continued to correspond, attempting to seek a business solution to the problem -- at all times focusing strictly on European markets. On June 18, 2004, Nike counsel Kenneth Kwartler contacted me via email regarding the European disputes. I replied to his email the following Monday, June 21, 2004. A true and correct copy of this late-June email exchange is attached hereto as **Exhibit 3**.

10.     On January 20, 2005, judgment was entered in the German dispute in favor of adidas-Salomon. A true and correct copy of an English translation of the German Court's decision is attached hereto as **Exhibit 4**. Nike has appealed that decision and the appeal is pending. The Netherlands action is still pending.

11.     The correspondence in Exhibits 1-3 typifies the usual course of dealings and protocols established between adidas and Nike for dealing with intellectual property matters, including potential disputes. The companies have cooperated and exchanged information on many intellectual property matters and, in matters of potential intellectual property disputes, the companies always have engaged in an informal dialogue in an attempt to work out those disputes. Pursuant to this protocol, it was my understanding that adidas and/or Nike would resort to taking more formal legal action only if such informal dialogue between the parties could not resolve the dispute. adidas has acted on that protocol since I have been employed by adidas.

12.     Furthermore, since my time with adidas, we have cooperated extensively with Nike on anti-counterfeiting matters, exchanging information and cooperating on legal action against those involved in counterfeiting, including in the U.S. where both companies use the same law firm for such work. We have also cooperated on patent matters, for example we have provided adidas shoe samples and catalogues for use in litigation brought against Nike by third parties, and Nike has provided us with Nike shoe samples and catalogues for use as evidence in lawsuits brought against adidas by third parties.

4-   DECLARATION OF TIM BEHEAN

13.     There have always been good relations between myself and my counterparts at Nike who handle counterfeiting and patent matters, and I believe there were always good relations between my former colleague Michael Heilbronner and Nike's trademark counsel, Ken Kwartler.  Indeed, it was an important objective for me when I joined adidas to establish and maintain such relations.  In view of the long term cordial relations and cooperation between the companies on intellectual property matters, it was a considerable surprise to me that these proceedings should be started and served on adidas without any prior communication with me or members of my department; and it was a considerable surprise to me also that Nike should express any concern now about an alleged intention by adidas to start trademark proceedings against them in the U.S. over the use of two-stripe markings on apparel, since the question had already been asked by Ken Kwartler in his June 18, 2004 email to me, and I had already replied in my email of June 21, 2004.

14.     Paragraph 17 of Nike's Complaint identifies four actions filed by adidas America and adidas-Salomon in this Court alleging trademark infringement: *Polo Ralph Lauren Corp.* (No. CV04-1124); *Abercrombie & Fitch Co.* (No. CV04-1866); *Redcats USA, Inc.* (CV05-211); and *Little Lady Sportswear, Inc.* (No. CV05-351).  Each of these cases involved claims by adidas that the defendant's *three*-stripe apparel infringes adidas's Three-Stripe Mark.

15.     The apparel depicted in the Complaint in the *Polo Ralph Lauren* case had three black stripes extending along the sleeves of an orange jacket:



PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
PORTLAND, OREGON 97209-4128
(503) 727-2000
(503) 727-2222

[21184-0050/PA052030.049]

16.    The apparel depicted in the Complaint in the *Abercrombie & Fitch* case was a white jacket with three blue stripes along the sleeves and pants with three stripes along the sides of the legs:

  

17.    The apparel depicted in the Complaint in the *Redcats* case was a black top and bottom bearing three white stripes:



PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
PORTLAND, OREGON 97209-4128
(503) 727-2000
(503) 727-2222

[21184-0050/PA052030.049]

18.    The apparel depicted in the Complaint in the *Little Lady* case was blue pants with three stripes along the sides of the legs:



19.    To the best of my knowledge, neither adidas America nor adidas-Salomon has ever initiated a lawsuit in the United States alleging that any use of two-stripe markings on apparel infringes the Three-Stripe Mark. The only lawsuits adidas has filed in the United States that involve the use of two stripes by another company have been in connection with the use of two stripe markings on footwear.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated:  July ___, 2005.

_____
Tim Behean

PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
PORTLAND, OREGON 97209-4128
(503) 727-2000
(503) 727-2222

[21184-0050/PA052030.049]

18.    The apparel depicted in the Complaint in the *Little Lady* case was blue pants with three stripes along the sides of the legs:



19.    To the best of my knowledge, neither adidas America nor adidas-Salomon has ever initiated a lawsuit in the United States alleging that any use of two-stripe markings on apparel infringes the Three-Stripe Mark. The only lawsuits adidas has filed in the United States that involve the use of two stripes by another company have been in connection with the use of two stripe markings on footwear.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: July 22, 2005.

_____
Tim Behean

7

Behean, Tim

| | |
|---|---|
| **From:** | Heilbronner, Mike |
| **Sent:** | Saturday, March 06, 2004 12:38 AM |
| **To:** | 'Kwartler, Kenneth' |
| **Subject:** | RE: Nike 2-Stripe Pant in Germany |

Hello Ken:

On Monday, when my assistant returns, we will fax two German decisions supporting our position with respect to this matter.

With respect to the ECJ decision, it speaks for itself. I don't know if you've read the decision, but we believe it clearly applies only to dilution-based remedies, and more importantly, never held that the stripes are decorative. Rather, the Court held that _if_ the stripes were found to be decorative (or something comparable to decorative), the dilution-based remedy would be unavailable.

A wide variety of news, trade and professional publications misrepresented the nature and content of the decision. Our suspicion is that most of these sources did not read the underlying opinion but, instead, relied on an original erroneous report.

Nevertheless, to date, German law is clear on the matter. We would appreciate your reconsidering this issue after you've had a chance to review the materials I fax on Monday.

Best regards.
Mike.


-----Original Message-----
From: Kwartler, Kenneth [mailto:Ken.Kwartler@nike.com]
Sent: Tuesday, March 02, 2004 10:59 AM
To: Heilbronner, Mike
Subject: RE: Nike 2-Stripe Pant in Germany

Hi Mike –

Thanks for your e-mail. I enjoyed meeting Mei-Lan at this week's INTA program – our companies face similar blessings and headaches.

I appreciate your bringing this matter to my attention in this manner, in light of our ongoing working relationship. My "jurisdiction" as trademark counsel is worldwide, so I do handle matters in Europe, and I'm happy to deal with you on this.

You've raised Adidas' objection in Germany to a Nike pant product that bears two stripes. I am unaware that Adidas has claimed or established rights to the two-stripe pattern that you've cited here, which is widely used by others.

I understand that Germany is a major market for Adidas, and that you have found German courts particularly hospitable to your past claims. I would like to review any material that you can provide supporting Adidas' proprietary claim to a two-stripe design, such as the ruling to which you alluded.

I'd also be grateful if you would address the ongoing viability of any such ruling, and your position overall, in light of the defeat that the European Court of Justice recently handed Adidas in what appears to be a similar case. As I understand it, the ECJ rejected your effort to prevent Fitnessworld's use of a two-stripe design on apparel. The ECJ characterized such stripes as "simple," "long-accepted" and "common" apparel "decorations and motifs," and stopped Adidas from enforcing its trademarks in any manner that might preclude others' use of stripes in a non-source indicating fashion.

I look forward to reviewing this material, and will endeavor to reply promptly thereafter.

Best regards – Ken

1

Exhibit I
Page 1 of 2
Behean Declaration

Ken Kwartler
Assistant General Counsel
Nike Inc.
One Bowerman Drive, DF4
Beaverton, OR 97005
(503) 671-3042 (ph)
(503) 646-6926 (fx)

-----Original Message-----
From: Heilbronner, Mike [mailto:Mike.Heilbronner@adidasus.com]
Sent: Friday, February 27, 2004 2:16 PM
To: Kenneth Kwartler (ken.kwartler@nike.com)
Cc: Heilbronner, Mike
Subject: Nike 2-Stripe Pant in Germany

Hello Ken:

I hope all is well across the river. My good friend Mei-lan Stark at Disney
mentioned that she enjoyed meeting you last week in Charleston.

I'm writing about another business/TM issue that has arisen for us, this
time in Germany. Attached is a photo of a 2-stripe warm-up pant offered by
Nike in Germany. The information on the hangtag is as follows:

WOMEN'S
FEMME
295538      010   GEX

It is a tracksuit pant with JUST DO IT heat transferred onto the side of the
leg.

As you can imagine, Germany is one of our strongest and most important
markets. Not coincidentally, we also have an extremely strong trademark
position in Germany, including a judgment supporting our right to prevent
athletic pants with 2 parallel bands running down the legs. If you'd like,
I would be happy to send you a copy of an English translation such a
decision involving the "C&A" company in Germany.

I know you don't handle matters in Europe, but given our past dealings and
mutual desire for an ongoing cooperative relationship in the IP area, I
thought it best as an initial matter to contact you about this.

In order to avoid an unnecessary conflict, we would appreciate Nike's
agreement to withdraw this product from the German market.

Of course, I would be happy to discuss this further with you, or
alternatively, put you or another attorney at Nike in touch with our counsel
in Europe.

Thank you for your attention to this matter. Best regards.
Mike Heilbronner



**Exhibit I**
**Page 2 of 2**
**Behean Declaration**

adidas International Marketing B.V.

adidas International Marketing B.V., P.O. Box 69001, 1060 CA, Amsterdam, The Netherlands

**Nike Benelux BV**
**Colosseum 1**
**1213 NL Hilversum**

| | |
|---|---|
| | adidas International Marketing B.V. |
| | De Prinsenhof |
| | Koningin Wilhelminaplein 30 |
| | 1062 KR Amsterdam |
| | The Netherlands |
| | |
| | Phone  +(31) 20-573-4558 |
| | Fax    +(31) 20-470-1986 |
| | Email: aline.elje@adidas.nl |

Sent by Fax prior to Mailing: 035 626 92 55

| Your reference | Your letter of | Our reference V 3042 HOL | Date 27 April, 2004 |
|---|---|---|---|

RE: Nike shorts and pants with two striped markings

Dear Sirs,

As you will certainly be aware, the adidas Group is the owner of the well known "3-Stripes" trade mark device. This mark has been used for more than fifty years on footwear and apparel and is registered world-wide, including in the Benelux (f.e. Benelux t.m. reg.nos. 001.340 and 0320482 and by international t.m. reg.nos. 414.034 and 414.037). We enclose for your reference a copy of these t.m. registration certificates (annex 1).

adidas has recently become aware that you have used in the course of trade in the Benelux, clothing products which bear two striped markings in a manner which we consider to be confusingly similar to our "3-Stripes" trade marks. In addition, the use of these striped markings is without due cause and takes unfair advantage of and/or is detrimental to the distinctive character and the repute of our "3-Stripes" trade marks. For your convenience, I attach a picture of the two products: a pair of pink shorts with two contrasting white stripes (annex 2) and a pair of red pants with two contrasting white stripes (annex 3) .

adidas has not given you any consent to market these clothing products or other identical or similar goods which bear signs which are identical or similar to the "3-Stripes" trade marks of adidas. In our opinion, the above-mentioned garments constitute a clear infringement of our exclusive rights. Your dealing in these infringing goods has caused damage to adidas. This damage consists of loss of income and detriment to the distinctive character and repute of the well-known "3-Stripes" device of adidas.

We are prepared to settle this matter out of court, on the condition that you confirm in writing that you:

1.  will cease and desist from any further infringement to the trade marks of adidas, such at the penalty of € 1.000,- per day.

2.  will provide the following information, which will have to be substantiated by (clearly readable copies of) all relevant documents of

Chamber of Commerce
Amsterdam no. 34122852
VAT no.
NL.8023.89.595.B.01

Exhibit 2
Page 1 of 7
Behean Declaration



a)  the total amount of infringing goods which you have produced and/or purchased and/or ordered, but which has not yet been delivered, as well as the total amount of infringing products that you still have in stock, specified by article and supplier;

b)  the total amount of infringing goods which you have already sold and/or distributed;

3.  will deliver up the infringing products for destruction and that you will arrange for destruction of the remaining stocks of infringing goods under supervision of a bailiff, who will prepare an official report of this destruction, which will be sent to adidas. You will agree to bear all costs of this destruction and the services of the bailiff.

As mentioned above, we hope to be able to settle this matter amicably. However, in the event that you fail to comply with our demands by 12 May, 2004, we reserve the right without further notice to commence proceedings for trade mark infringement against you in the Benelux.

I will send you this letter by (registered) mail and by fax.

Yours faithfully,

A. Olic
Intellectual Property Department
adidas International Marketing BV

Exhibit 2
Page 2 of 7
Behean Declaration

Annex 2



Exhibit 2
Page 3 of 7
Behean Declaration



Exhibit 2
Page 4 of 7
Behean Declaration

May 12, 2004

<u>Via fax and 1st class mail</u>

Ms. A. Olie
Intellectual Property Department
Adidas International Marketing BV
Koningin Wilhelminaplein 30
1062 KR Amsterdam
The Netherlands

Dear Ms. Olie:

I am replying to your April 27, 2004 letter to Nike Benelux BV.

Your letter contends that Adidas' "3-stripes" trademark device extends beyond its stated bounds, and entitles Adidas to object to Nike's use of a common two-stripe design motif on products clearly labeled as emanating from Nike.

You contend that such decorative use of stripes infringes Adidas' rights, and takes unfair advantage of and/or is detrimental to your trademark's distinctive character and reputation. Adidas thus demands that Nike cease further distribution of an unspecified range of products that Adidas might consider objectionable, deliver them up to you for destruction, and pay you unspecified sums relating thereto.

Nike disagrees with these sweeping contentions, and must reject your onerous demands.

Let me begin by noting that Nike respects others' intellectual property rights as a matter of corporate policy. We are committed to the ongoing viability of international trademark laws. Moreover, we recognize Adidas' trademark rights to certain specific three-stripe designations, and have no interest in using another's trademark, particularly given the great fame and popularity of our own.

We are also mindful, however, that stripes are perhaps the oldest and most widely-used design element known to humankind. This simple and common element has been ubiquitous for centuries in creative works from art to architecture to apparel.

NIKE, INC. ONE BOWERMAN DRIVE, BEAVERTON, OR 97005-6453 TEL:503-671-6453

KENNETH M. KWARTLER  ASSISTANT GENERAL COUNSEL DIRECT DIAL:503-671-5042 FAX:503-646-6926

Exhibit 2
Page 5 of 7
Behean Declaration

Ms. A. Olie
May 12, 2004
Page 2

Stripes commonly adorn a wide array of modern products - particularly sports apparel -
as ornamentation and embellishment, not as an indication of source. They are widely
recognized and accepted decorations and motifs. (As such, they differ considerably from
a truly unique and distinctive commercial symbol such as Nike's own world-famous
Swoosh Design trademark.) Hence, your mark's scope of protection can hardly extend to
different striped design patterns.

We are aware that Adidas has recently sought to expand its proprietary claims to these
common design elements through a questionable campaign of litigation against others.
You apparently contend that a broad range of embellishing stripe designs now violate
your rights, and seek to limit sharply other's ability to so design their works.

While we strive to respect your true trademark rights, we believe that it is equally
important to preserve the freedom of Nike and others to continue the historical use of
stripes as design elements. As such, we contend that your claims overstep considerably
the actual extent of your limited rights to these common motifs. Moreover, your efforts
to block others from using these motifs misuse intellectual property laws in a manner that
may restrain fair trade and free competition.

The goods to which you object here are unmistakably identified as Nike products. Each
prominently bears the famous Nike Swoosh Design trademark, which is one of the
world's most recognized commercial symbols. Each also prominently bears our NIKE
trademark to indicate Nike as the product's source.

It is very unlikely that anyone who encounters these products would believe that they
emanate from any entity other than Nike. The decorative stripes that appear on the
product are similar to those of literally hundreds of other apparel items of numerous
manufacturers, schools and teams, and we do not believe that they will be linked to
Adidas. Nike did not take unfair advantage of your actual trademark, nor do we believe
that the adornment has a dilutive or detrimental impact on your mark or its reputation.

Moreover, we believe that your contentions would have the practical effect of terminating
the centuries-old decorative use of a common design feature in connection with any type
of useful object that you yourselves may manufacture. We do not read intellectual
property law to confer such sweeping rights upon anyone, nor to enable any modern
company to block the ongoing decorative or artistic use of a beloved design motif.

To the extent that Adidas objects to others' decorative use of stripes as harmful to its
business, we contend that this is simply a risk that you assumed by selecting such a
longstanding and common design element as the foundation for your commercial
identity. You cannot now seek to foreclose others' ongoing decorative use of stripes
merely by asserting that some may occasionally "link" these age-old, public domain
elements to your company.

Exhibit 2
Page 6 of 7
Behean Declaration

05/12/04  18:21 FAX 503 671 5777                                            ☒004

Ms. A. Olie
May 12, 2004
Page 3


We will respect your trademark rights within accepted and reasonable bounds. We will,
however, oppose any effort to limit the very currency of modern design. Accordingly,
we reject both your overbroad claims and sweeping demands.


Very truly yours,

*[signature]*

Kenneth M. Kwartler

12/05 '04 WED 22:07  [TX/RX NO 7784] ☒004

From:31 20 4701866    Page: 4/8    Date: 19-5-2004 18:49:52

Exhibit 2
Page 7 of 7
Behean Declaration

010 ☒    ADIDAS INT.    04/05 '05 18:11 FAX 31 20 4701866

Rodal, Maya

**From:** Behean, Tim
**Sent:** 21 June 2004 18:37
**To:** 'Kwarter, Kenneth'
**Subject:** RE: Nike matter

Hello Ken,

Thanks for your mail. I appreciate your willingness to discuss this matter, and I should like to repeat straightaway that it is our strong preference to settle this matter amicably if possible.

I think, though, that you dramatise a little the claim we are making. We are seeking that Nike withdraw certain specific items of apparel that we have identified, having a 2 stripe marking. We seek this withdrawal in Europe - we have made formal protests in Germany and the Netherlands because that is where we have identified the products on sale.

The tone of your mail, for instance your reference to the 2 stripe marking Nike is using as "fundamental, longstanding and commonplace", suggests that there is a significant commercial issue at stake here for your company. We are, however, struggling to understand what this might be. As you point out, you like us produce many thousands of apparel designs (and no doubt some of these have used stripes in ways that have nothing to do with us). If the items we have complained about are, to you, just one design motif out of the huge number that are available, why is it such a fundamental issue for you to use a different design? Although you say you have used this 2 stripe marking before in Europe, we are certainly not aware of this.

I should like to comment on the main points that you raise against us, namely your claim that the 2 stripe marking is a common design, and that the use of the swoosh on your products avoids confusion.

Whether or not the 2 stripe marking is a common design is a question of fact, depending on the perceptions of consumers country to country. It is the same with trade marks: their strength, reputation associated with them, and the propensity for confusion or association for example are all matters that can vary from country to country, depending on consumer perceptions. This has been confirmed by the European Court of Justice in particular in Fitnessworld. The question of whether a sign is associated with a trade mark, or seen as only decoration, is a matter of fact, to be determined by the national courts.

So what are the facts in the countries we are concerned with? In our favour are the court findings and survey results. On your side, you assert it but have provided no evidence to support your claim. If you have survey or other good evidence, I should be grateful to review it, but in the circumstances your assertion by itself is not very persuasive. You refer to military and service industry uniforms, and whilst I would be interested to see what Dutch, German or other European uniforms you have in mind which pre-date the creation of our trade mark, I just do not see the relevance to sport products. You refer to use of 2 stripe markings by other companies on sports and casual products, and I accept that there has been usage of 2 stripe markings by others. I believe we have been diligent in protesting infringements of our rights, and as a result we have litigated with a number of companies in connection with the use of striped markings. The majority, though, have settled with us, no doubt recognising the many other uses of stripes they could make in alternative designs. The fact that others infringe does not make the infringing use a common design available to all to use.

If your strategy is to try to identify as many uses of stripes as you can in support of your assertion, then please be aware that this has been done before, as you will have seen from the case reports, but unsuccessfully.

You also seem to believe that in some sense our trade mark is fatally flawed or weakened, because you say it is based upon a pre-existing commonplace design. Whilst I dispute strongly your assertion about the origin of our trade mark, I think you have missed the point that whatever its origins, our trade mark is now extremely strong and well known. There are many good examples of famous trade marks with apparently humble origins: the letter M and the number 5, commonplace features of our language, have been

1

Exhibit 3
Page 1 of 4
Behean Declaration

04/05 '05 18:12 FAX 31 20 4701886    ADIDAS INT.    ☒013

made into famous trade marks by McDonalds and Chanel; the Levi's tab might have been a label; the Burberry check presumably derived from decorative check; and your own swoosh no doubt derives from the check mark, a commonplace commercial symbol to indicate approval. But the origin of these marks does not weaken them, or make it more acceptable for others to use similar marks.

To emphasise again, our trade mark is not a generalised use of stripes. It comprises stripes
* that are parallel;
* at particular locations on apparel;
* of particular proportions - width and spacing;
* in contrasting colours or materials;
* 3 in number.

Nike has chosen to use a stripe marking that reproduces all these features of our trade mark, using one less stripe. I should add that we would be similarly concerned if you were to use those features with the addition of a stripe.

You have also emphasised the presence of the swoosh on your products. We do not think this is a serious argument legally or commercially. As I expect you are aware, trade mark law in Europe does not generally allow a defendant to avoid infringement by placing his own name or trade mark, even a well known trade mark, on products that would otherwise infringe. In the case of the apparel in issue, it is clear that the swoosh will not be visible to consumers at all times that the stripe marking is visible, so there could well be initial interest confusion at point of sale, as well as post sale confusion when the products are being worn. And whilst you reject association as a basis for complaint, I say simply that that is the law in the EU, as determined by the highest legal authority short of the legislature.

I hope these comments will help you to understand better our claim. I have not responded specifically to your request that I define the scope of our trade mark rights, and I think that as a trade mark lawyer, you will understand that it is not feasible to do this exhaustively. Infringements of "adidas" would include adidos, addidas, and so on, but I doubt I could produce a list that would exhaust the ingenuity of infringers.

If you think it would be helpful to discuss this matter, or to meet, please let me know. In the meantime, if you are not already aware, we have now initiated proceedings in the Netherlands and Germany.

Tim

-----Original Message-----
From: Kwartler, Kenneth [mailto:Ken.Kwartler@nike.com]
Sent: 18 June 2004 04:59
To: Tim.Behean@adidas.nl
Subject: RE: Nike matter

Dear Tim:

I am writing to reply to your e-mail correspondence and to comment on the recent exchanges between our counsel in Germany.

I am sorry to note that we remain very far apart on Adidas' demands that Nike (and others) cease using a fundamental, longstanding and commonplace design motif.

As noted in my earlier letter to your colleague A. Olie, Nike respects others' intellectual property rights as a matter of corporate policy. We are strongly committed to the ongoing viability of international trademark laws. Moreover, we recognize and respect Adidas' rights to certain specific three-stripe designs in connection with particular goods.

Nike has produced thousands of different apparel designs during my five years as trademark counsel here. Adidas has contacted me with concerns about fewer than a dozen of these. And while we have disagreed with your concerns on several occasions, we have been responsive when we judged them well founded. Our discomfort with one apparel design that you brought to our attention last year led us to withhold a significant volume of product from the market.

Exhibit 3
Page 2 of 4
Behean Declaration

Adidas' current demand, however, far exceeds the scope of your intellectual property rights, and threatens fair trade and free competition in the athletic apparel industry.

Stripes were in common use as a design motif long before Adidas and its trademarks came into being. As my earlier letter noted, decorative stripes have adorned a wide array of products for centuries. Moreover, stripes were widely employed to embellish sleeves and pant legs long before Adidas began using its three-stripe trademark in this manner. Ample evidence of striped sleeves and pants can be found from military and service-industry garb to school and sport uniforms and casual apparel.

Adidas chose this established and commonplace design element as the foundation for its commercial identity, notwithstanding its extensive pre-existing use in apparel design and ornamentation. In our view, this precludes you from objecting to others' ongoing decorative use of stripe designs. To assert otherwise offends the fundamental principle of the public domain, let alone the viability of free expression in commercial design.

Your current demands are also disturbing by virtue of their abruptness and lack of definition.

Nike, like most other athletic apparel manufacturers, has used stripes for decades to adorn product. We have used the particular two-stripe decorative pattern at issue here for years as well. Adidas has never before objected to it.

Your acquiescence in our practice was entirely consistent with our own view that your rights extended only to particular three-stripe patterns. Moreover, the widespread availability of other apparel products bearing similar decorative two-stripe motifs strongly reinforced this view.

Now, abruptly, you demand that we withdraw certain products based upon your new and expanded trademark claims. Your sudden change in posture seems to owe principally to a favorable local court ruling, which, as our counsel's attached letter indicates, is of dubious applicability here. (Among other things, that defendant did not address the weakness in your position caused by other well-known brands' use of the same design that you object to here, nor emphasize that a purely "associative" connection does not constitute a likelihood of confusion under German trademark law.)

Even more troubling than your recent change in position is the uncertainty that it would inflict upon to the marketplace. Your three-stripe trademark is relatively easy to understand and respect. But the aggressive stance you now assert goes well beyond this. You now object to a commonplace, longstanding two-stripe motif because it might be merely "associated" with your company.

If you thereby contend that a two-stripe design now violates your rights, what about other common stripe designs? Would a single-stripe design also now offend? Four stripes? Five? Must all other companies simply cease using stripes on sleeves and pants entirely?

The geographic scope of your claim is similarly vague. In previous communications, Adidas has challenged our products in only Germany and The Netherlands. Do you consider stripes off limits to others only in these locations? Worldwide?

As you well know, a trademark cannot be a moving target. Its owner must clearly articulate and define its limits so as to build recognition, guide competitors and honor the public domain.

Yet Adidas now seems to promote uncertainty as to the extent of its claimed rights, as my August 5, 2003 letter to Mr. Heilbronner asserted. You then appear to wield this uncertainty to inhibit competitors and expand your hold on stripe patterns. As noted above, this approach offends not only trademark law, but the principles of fair trade and free competition.

Nike cannot abide any effort by any competitor to remove from the language of modern commercial design any common and longstanding design element. We thus continue to reject your demands, while urging you to adopt a more reasonable, legally supportable, and more clearly-defined position.

In this spirit, we would be grateful if you would articulate for us: (a) what you now consider to be the extent of your intellectual property rights regarding stripe patterns, and (b) the geographic extent of these new claims. We will be happy to

3

Exhibit 3
Page 3 of 4
Behean Declaration

respond in the hope of reaching a constructive resolution to our differences here.

Very truly yours,
Ken Kwartler

Assistant General Counsel
Nike Inc.
One Bowerman Drive, DF4
Beaverton, OR 97005
(503) 671-3042 (ph)
(503) 646-6926 (fx)

Exhibit 3
Page 4 of 4
Behean Declaration

*Translation*

# REGIONAL COURT COLOGNE
## IN THE NAME OF THE PEOPLE
## JUDGMENT

Pronounced on January 20, 2005

84 O 74/04

As Clerk of the Court

In the law suit

of adidas-Salomon AG, legally represented by the management board, consisting of Herbert Hainer, Glenn Bennet, Michel Perraudin, Robin Stalker, Erich Stamminger, Adi-Daßler-Platz 1 - 2, 91074 Herzogenaurach.

Plaintiff,

- Counsel: Attorneys-at-Law Lorenz, Seidler and Gossel in Munich -

v e r s u s

1.  Nike International Ltd., Bermuda, with the Germany branch of Nike International Ltd., represented by the management board, Hessenring 13 A, 64546 Mörfelden-Walldorf,

2.  Nike Retail B.V., 1213 Hilversum, Netherlands, with the branch establishment NIKETOWN Berlin, branch establishment of Nike Retail B.V. in Berlin, represented by the management board, Tauentzienstraße 7 B/C, 14057 Berlin,

Defendants,

- Counsel: Attorneys-at-Law Taylor, Wessing in Harmburg -

after the oral hearing of October 13, 2004, through the Presiding Judge Engmann at the Regional Court and the associated Commercial Judges Böing and Stankiewicz-Schetzka the 4th Division for Commercial Matters of the Regional Court Cologne **held:**

I.   The Defendant to 1. is sentenced, under penalty of an administrative fine of up to € 250,000.00 to be assessed by the

Exhibit 4
Page 1 of 12
Behean Declaration

- 2 -

Court for each case of infringement, as a substitute arrest, or of an arrest of up to 6 months, to cease and desist from

> offering articles of clothing as depicted below, or putting them on the market or stocking them for these purposes, and/or from importing or exporting them as well as from advertising them, which are provided with a stripes marking as depicted:

*(illustrations of articles of clothing)*

II.    It is found that the Defendant to 1. is obligated to compensate the Plaintiff for all damages which have resulted for the Plaintiff from acts under item I. since April 10, 2004, and still will result therefrom.

III.    The Defendant to 1. is sentenced to provide information to the Plaintiff on the extent of acts under item 1. made by it since April 10, 2004, in particular to provide information on the origin and the channels of distribution of said goods (the name and address of the manufacturer, of the supplier and other previous possessors of the goods, the commercial purchasers and or customers) as well as on the quantity of the goods manufactured, delivered, received or ordered, furthermore to provide information and render account on the turnovers obtained with said goods (Euro and number of items) as well as on the profit made by the distribution thereof, by itemizing the individual cost factors, and on the advertising made (advertising media, circulation figures, dates of publication, circulation areas), as well as to submit purchase vouchers and sales vouchers, invoices, delivery notes, order confirmations and other documents concerning the goods in question.

IV.    The Defendant to 2. is sentenced, under penalty of an administrative fine of up to € 250,000.00 to be assessed by the

Exhibit 4
Page 2 of 12
Behean Declaration

Court for each case of infringement, as a substitute arrest, or of an arrest of up to 6 months, to cease and desist from

offering articles of clothing as depicted below, or putting them on the market or stocking them for these purposes, and/or from importing or exporting them as well as from advertising them, which are provided with a stripes marking as depicted:

*(illustrations of articles of clothing)*

V.   It is found that the Defendant to 2. is obligated to compensate the Plaintiff for all damages which have resulted for the Plaintiff from acts under item I. since April 5, 2004, and still will result therefrom.

VI.   The Defendant to 2. is sentenced to provide information to the Plaintiff on the extent of acts under item 1. made by it since April 5, 2004, in particular to provide information on the origin and the channels of distribution of said goods (the name and address of the manufacturer, of the supplier and other previous possessors of the goods, the commercial purchasers or the customers) as well as on the quantity of the goods manufactured, delivered, received or ordered, furthermore to provide information and render account on the turnovers obtained with said goods (Euro and number of items) as well as on the profit made by the distribution thereof, by itemizing the individual cost factors, and on the advertising made (advertising media, circulation figures, dates of publication, circulation areas), as well as to submit purchase vouchers and sales vouchers, invoices, delivery notes, order confirmations and other documents concerning the goods in question.

VII.   The Defendants each bear half of the costs of the lawsuit.

Exhibit 4
Page 3 of 12
Behean Declaration

VIII. Because of the costs, the judgment is provisionally enforceable, respectively, on provision of a security in the amount of 110 % of the amount to be enforced and. as for the rest, on provision of a security in the amount of € 100,000.00, respectively.

## FACTS OF THE CASE:

According to its pleadings, the Plaintiff is the second-largest sports article manufacturer of the world. For years now it has marked its sports shoes and sports textiles with its three-stripes marking. In the sports textiles, the three parallel stripes are usually provided in longitudinal direction along the side seams, wherein regularly the colour of the stripes is in contrast to the basic colour of the article.

The Plaintiff is the owner of a series of registered trademarks. While device mark No. 944623 shows the arrangement of three slanting stripes on a sports shoe, the device marks Nos. 414034, 414035 and 414037 refer to the arrangement of the three stripes on a sports suit, a sport jacket as well as on sports trousers.

The Defendants which belong to the Nike group also distribute sports clothing on a large scale. On April 5, 2004, on the Plaintiff's part the pair of green sports trousers depicted under item IV. in the operative part of this judgment was bought in a shop operated directly by the Defendant to 2., which in the section of the side seams respectively has two parallel-extending white stripes of the same width which are separated by a green stripe of the same width; on the front side of the trousers, below the waistband, there is affixed the Nike marking, the Nike tick, in silver colour.

On April 10, 2004, on the Plaintiff's part the sports textiles depicted under item I. in the operative part of this judgment were bought, which are, on the one hand, a pair of long-legged sports trousers also being provided at the side seams, respectively with two parallel-extending white stripes of the same width on a dark-blue ground; the Nike tick is embroidered on the front side below the waistband. The second article is a pair of short sports trousers in grey colour which, at the side seams, respectively, also has two white longitudinal stripes of the same width between which the grey

Exhibit 4
Page 4 of 12
Behean Declaration

fabric of the trousers appears as a further longitudinal stripe of the same width; the Nike tick is embroidered in silver colour on the front side laterally above the one leg opening.

The Plaintiff regards its get-up rights in the three-stripes marking for sports textiles as well as its trademark rights for sports clothing and casual wear as being infringed thereby.

The Plaintiff requests:

I. The Defendant to 1. shall be prohibited, under penalty of an administrative fine of up to € 250,000.00 to be assessed by the Court for each case of infringement, as a substitute arrest, or of an arrest of up to 6 months, from

offering articles of clothing as depicted below, or putting them on the market or stocking them for these purposes, and/or from importing or exporting them as well as from advertising them, which are provided with a stripes marking as depicted:

*(illustrations of articles of clothing)*

II. It is found that the Defendant to 1. is obligated to compensate the Plaintiff for all damages which have resulted for the Plaintiff from acts under item I. since April 10, 2004, and still will result therefrom.

Alternatively: It is found that the Defendant to 1. is obligated to hand over to the Plaintiff the unjustified enrichment obtained by acts under item I. since April 10, 2004.

III. The Defendant to 1. is sentenced to provide information to the Plaintiff on the extent of acts under item 1. made by it since April 10, 2004, in particular to provide information on the origin and the

Exhibit 4
Page 5 of 12
Behean Declaration

channels of distribution of said goods (the name and address of the manufacturer, of the supplier and other previous possessors of the goods, the commercial purchasers or the customers) as well as on the quantity of the goods manufactured, delivered, received or ordered, furthermore to provide information and render account on the turnovers obtained with said goods (Euro and number of items) as well as on the profit made by the distribution thereof, by itemizing the individual cost factors, and on the advertising made (advertising media, circulation figures, dates of publication, circulation areas), as well as to present purchase vouchers and sales vouchers, invoices, delivery notes, order confirmations and other documents concerning the goods in question.

IV.    The Defendant to 2. shall be prohibited, under penalty of an administrative fine of up to € 250,000.00 to be assessed by the Court for each case of infringement, as a substitute arrest, or of an arrest of up to 6 months, from

offering articles of clothing as depicted below, or putting them on the market or stocking them for these purposes, and/or from importing or exporting them as well as from advertising them, which are provided with a stripes marking as shown:

*(illustrations of articles of clothing)*

V.    It is found that the Defendant to 2. is obligated to compensate the Plaintiff for all damages which have resulted for the Plaintiff from acts under item I. since April 5, 2004, and still will result therefrom.

Alternatively: It is found that the Defendant to 2. is obligated to hand over to the Plaintiff the unjustified enrichment obtained by acts under item I. since April 10, 2004.

Exhibit 4
Page 6 of 12
Behean Declaration

VI.   The Defendant to 2. is sentenced to provide information to the Plaintiff on the extent of acts under item 1. made by it since April 5, 2004, in particular to provide information on the origin and the channels of distribution of said goods (the name and address of the manufacturer, of the supplier and other previous possessors of the goods, the commercial purchasers or the customers) as well as on the quantity of the goods manufactured, delivered, received or ordered, furthermore to provide information and render account on the turnovers obtained with said goods (Euro and number of items) as well as on the profit made by the distribution thereof, by itemizing the individual cost factors, and on the advertising made (advertising media, circulation figures, dates of publication, circulation areas), as well as to submit purchase vouchers and sales vouchers, invoices, delivery notes, order confirmations and other documents concerning the goods in question.

The Defendants request

to dismiss the action.

The Defendants claim that they did not use the stripes get-up like a trademark but as a purely ornamental element; for the purpose of the trademark-like description of origin and attribution of their products to their house, the own trademarks of the Defendants were affixed at a prominent position.

Moreover, the attacked design forms would differ substantially from the three-stripes trademark of the Plaintiff. Finally, by the general use of such decorative two stripes designs the concerned public was used to their existence on the products of different manufacturers; therefore, the three-stripes trademark of the Plaintiff would neither be impaired by such designs, nor would any characterizing force be attached in this respect to a two-stripes design.

Exhibit 4
Page 7 of 12
Behean Declaration

With respect to the further details of the position of the stage of the proceedings, reference is made to the content of the briefs exchanged between the parties and to the documents submitted by the parties.

## REASONS FOR THE DECISION:

The action is founded.

The Plaintiff can demand from the Defendants that they stop their infringing actions, furnish information and ascertain the damages according to the operative part, as the stripes markings at issue infringe the trademark rights of the Plaintiff, Sections 4, 14 Subsection 2 No. 2 Trademark Act. Pursuant to these rules, third parties shall be prohibited from using in the course of trade without the consent of the owner of the trademark any sign where, because of its identity with, or similarity to, the trademark and the identity or similarity of the goods or services covered by the trademark and the sign, there exists a likelihood of confusion on the part of the public, which includes the likelihood of the sign and the trademark becoming associated in the mind of the public. These conditions are met here.

With respect to quite similar two-stripes designs on sports textiles and casual wear as attacked in the present case by the Plaintiff, there exist already decisions of the Federal Court of Justice (judgment of July 6, 2000, in WRP 2001, 41 et seq.) and of the Higher Regional Court Munich (judgment of July 26, 2001, in GRUR-RR 2001, 303 et seq.), according to which such a design is an infringement of the device marks protected for the Plaintiff. The Division sees no cause to deviate from said decisions in the present case.

According thereto, the question of the danger of confusion under the trademark law is to be checked by taking into account all circumstances of the individual case completely, wherein there is a correlation between the factors to be taken into account, in particular the identity or similarity of the goods in question, the identity or similarity of the trademarks as well as the distinctive force of the Plaintiff's markings. According thereto, in particular a minor degree of similarity of the trademarks can be

Exhibit 4
Page 8 of 12
Behean Declaration

made up for by a higher degree of similarity of the goods and/or a special notoriety of the older trademark in the market.

In the present case, the goods of the Plaintiff's trademarks to be taken into account and the attacked articles of clothing are identical goods.

Together with the Higher Regional Court Munich, the Division affirms the increased characterizing force of the Plaintiff's trademarks with a corresponding scope of protection. With respect thereto, the Higher Regional Court Munich stated in its judgment:

> "The extremely high notoriety of the three-stripes marking of adidas is a generally known fact. For years now, everyone has come across articles of sports clothing and casual wear with the three-stripes marking of the Plaintiff quite often in the streets and in an especially enduring manner within the scope of TV transmissions of German as well as international sports events. In the streets, the stripes marking of the Plaintiff is a familiar appearance, and many of the German and foreign top sportsmen have been wearing the articles of sports clothing of the Plaintiff with the stripes marking for decades, for instance a whole line of Federal League football teams, among them FC Bayern München, but also the German national football team and - as strikes the eye in TV transmissions - also some foreign national teams. Also German and foreign top sportsmen in other sports categories, e.g. athletics and tennis, appear in adidas clothing with the stripes marking. Above all also by such TV transmissions the three-stripes marking of the Plaintiff has become known world-wide. Also in the sports section of the daily newspapers very often clothing articles with the marking of the Plaintiff can be seen. Furthermore, publications in print media ... which deal with the Plaintiff and its stripes marking contribute to the high degree of notoriety of the Plaintiff's marking. As the Plaintiff is still selling high numbers of articles of sports clothing and owns corresponding market shares, the media interest in the three-stripes marking and thus its presence in the media continues to be high - as everybody can notice.

Exhibit 4
Page 9 of 12
Behean Declaration

The question of the notoriety of the Plaintiff's marking encountered by everyone can be judged by the Court due to its own knowledge of the facts on the subject without an interrogation of the concerned public. Of course it can be found that the concerned public knows the three-stripes marking of the Plaintiff extraordinarily well. Hence, a correspondingly high degree of adoption in the circles of the concerned public has to be taken as a basis. The high degree of notoriety of the Plaintiff's marking is general knowledge and therefore is a fact obvious to the Court with no need for a proof pursuant to Section 291 Code of Civil Procedure (BGH, GRUR 1960, 126, 127 et seq. - Sternbild).

Thus, the Plaintiff's trademarks have a high distinctive force being based on an enormously high degree of notoriety."

When checking the danger of confusion under trademark law, attention has to be paid to the respective impression as a whole of the opposing trademarks. For the question of the correlation of the three essential factors in judging the danger of confusion under trademark law, the distinctive force of the Plaintiff's trademark and similarity of goods are present in an enormous intensity so that a comparatively low degree of similarity of the trademarks can be made up for.

The trademark similarity is determined by the impression as a whole of the collision trademarks, wherein the respective impression as a whole of the opposing trademarks has to be ascertained. Said impression as a whole of the colliding trademarks can be described such that the two markings are stripes with contrasting colours and extending in parallel along the side seams of the articles of clothing which only differ in the number of the stripes, as the Plaintiff's marking has three stripes and the attacked forms of use have two stripes. The fact that the opposing markings are quite similar and only differ in one point, namely in the number of the stripes, leads to the fact that also the degree of the trademark similarity cannot be judged as being low.

Together with the Higher Regional Court Munich, the Division proceeds from the fact that the intelligent average consumer to which attention is to be paid will believe to easier recognize again in another marking quite well-known markings remembered

Exhibit 4
Page 10 of 12
Behean Declaration

by him, wherein it has to be taken into account that also said average consumer has to rely on the incomplete picture he bears in mind, as the colliding markings normally will not come across him next to each other. It has also to be considered that his degree of attention can differ enormously depending on the kind of the goods in question. Therefore, by taking into account the correlation of the decisive factors of the danger of confusion, for the concerned public which comes across the attacked markings the danger of confusions of the colliding trademarks has to be affirmed.

Moreover, it has to be assumed that the concerned public will recognize the two-stripes get-up in dispute as a marking and not only as a purely ornamental element. Because of the high degree of notoriety of the Plaintiff's markings and of the trademark practice of the Plaintiff, the concerned public is used to the fact to see an indication to origin in the get-up being of interest here of contrasting stripes along the side seams of articles of sports clothing, so that normally such a get-up is regarded by the concerned public as an indication to origin.

This understanding of the concerned public is not changed by the fact that on the textiles in dispute here also another famous marking is affixed, namely the Nike tick. In any case, said mark is attached on the grey shorts in a more discreet manner and the tick also optically comes second on the two long-legged sports trousers compared to the striking two-stripes get-up. Since said two-stripes get-up reminds the concerned public enormously of the marking used and made famous by the Plaintiff, the concerned public will assume a cooperation of the owners of the two markings identified by it. The fact that it recognizes the tick as the trademark of Nike does not necessarily lead to the fact that it will now no longer associate such a multi-stripes get up - as used in the present case and as understood by it as an indication to the Plaintiff - with the Plaintiff and will see it as a purely ornamental element.

In any case, the Defendants have to be accused of negligence. Statements on the part of the counsel of the Defendants on the occasion of the court hearing of January 20, 2005, were interpreted by the members of the Division such that on the part of the Defendants the get-up in dispute was chosen intentionally for the present textiles in imitation of the marking used by the Plaintiff with the aim to test how close you can

Exhibit 4
Page 11 of 12
Behean Declaration

get to the Plaintiff's marking and at the same time to cause an impairment of the Plaintiff's marking.

For the calculation of the damages resulting from the unlawful use of a mark being too similar which have to be paid by the Defendants pursuant to Section 14 Subsection 6 Trademark Act, the Plaintiff requires the requested information which, consequently, the Defendants have to furnish to it pursuant to Section 242 Civil Code.

The additional decisions result from Sections 91, 709 Code of Civil Procedure.

Value of the matter in dispute: €  1,000,000.00

_____        _____        _____
                                           (Böing)                    (Stankiewicz-Schetzka)

Exhibit 4
Page 12 of 12
Behean Declaration