IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| NIKE, INC., an Oregon corporation,<br><br>       Plaintiff,<br><br>v.<br><br>ADIDAS AMERICA, INC.,<br>a Delaware corporation and<br>ADIDAS AG, a German corporation,<br><br>       Defendants. | 05-CV-541-BR<br><br><br>**AMENDED<br>OPINION AND ORDER** |


**JON P. STRIDE**
Tonkon Torp LLP
888 S.W. Fifth Avenue, Suite 1600
Portland, OR  97204
(503) 221-1440

**ADRIAN M. PRUETZ
SCOTT B. KIDMAN**
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

       Attorneys for Plaintiff


1 - AMENDED OPINION AND ORDER

**STEPHEN M. FELDMAN**
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209
(503) 727-2058

**JERRE B. SWANN**
**WILLIAM H. BREWSTER**
**R. CHARLES HENN, JR.**
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500

      Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Defendants' Renewed Motion to Dismiss (#87).  For the reasons that follow, the Court **GRANTS** Defendants' Motion.[1]

## BACKGROUND

    adidas AG is a German company and the owner of several trademarks, including its well-known "Three-Stripe Mark," which consists of three equally-sized, equally-spaced parallel stripes applied to particular locations on apparel products.  adidas America, Inc., a subsidiary of adidas AG, is an authorized distributor of merchandise in the United States that bears

---

[1] The Court is issuing an Amended Opinion to correct a misstatement of a standard in its December 12, 2006, Opinion and Order.  The misstatement does not change either the Court's analysis or its conclusion.

2 - AMENDED OPINION AND ORDER

various adidas AG trademarks, including the Three-Stripe Mark. Both adidas America and adidas AG[2] have brought various actions in United States courts to enforce their rights to the Three-Stripe Mark, but neither entity has brought a trademark-infringement action against Nike in the United States.

In its Complaint, Nike alleges it produces garments that incorporate a two-stripe design.  Nike seeks a declaration from the Court that Nike's use of two stripes in apparel designs does not infringe or dilute adidas's Three-Stripe Mark.

In May and July 2005, adidas moved to dismiss Nike's Complaint on the ground that Nike failed to establish this Court has subject-matter jurisdiction.  Specifically, adidas contended an actual case or controversy does not exist between adidas and Nike because, at the time Nike filed its Complaint, Nike did not have the requisite real and substantial apprehension that adidas would bring a trademark-infringement action against Nike in the United States.  On October 24, 2005, the Court denied adidas's Motion to Dismiss on the ground that Nike had presented sufficient evidence to establish a *prima facie* case that this Court has jurisdiction over this matter.

On September 18, 2006, adidas filed a Stipulation that provides:

---

[2] The Court hereinafter refers to both Defendants collectively as "adidas."

3 - AMENDED OPINION AND ORDER

  a. With respect to any of the Catalog Products currently being offered for sale or sold in the United States by Nike as of the date of this Stipulation, adidas covenants not to sue Nike asserting trademark infringement or dilution of the Three-Strike Mark in the United States; and

  b. With respect to any of the Catalog Products previously but not currently offered for sale or sold in the United States by Nike as of the date of this Stipulation, adidas hereby releases, acquits, and discharges Nike for any liability to adidas for infringement of dilution of the Three-Stripe Mark in the United States arising from Nike's offer for sale or sale of such products to date in the United States.

adidas excepted certain categories from the above paragraphs, including:

  a. <u>The Counterclaim Products</u>.  adidas has pending a counterclaim in the United States that alleges that the Tempo Track Short (Style No. 211071). . . and the Jeter Six4Three shoe . . . (Style No. 311059, Color No. 001) (collectively, the "Counterclaim Products") infringe and dilute the Three-Stripe Mark.

  b. <u>Previously Disputed Products</u>.  adidas informally raised concerns that two Nike products, the Lungfish shoe (Style No. 302163) and a pant that . . . appeared to have three stripes on the outseam (Style No. 295538, Color No. 010) (the "Previously Disputed Products") infringed or diluted the Three-Stripe Mark, and Nike agreed to and did discontinue the sale of such products.

  c. <u>Excepted Catalog Products</u>.  Upon review of the Catalogs and product samples provided by Nike, adidas has identified certain products that bear the Three-Stripe Mark or a design that is confusingly similar to the Three-Stripe Mark.  These products are listed in

4 - AMENDED OPINION AND ORDER

the attached Exhibit 3 (the"Excepted Catalog Products").

adidas, however, stipulated to the following categories:

      3.    With respect to the Counterclaim Products, adidas understands that the Tempo Track Short has been redesigned . . ., and that the Jeter Six4Three shoe is no longer offered in the particular black-white color blocking [at issue].  Therefore, adidas understands that the Counterclaim Products are not presently being offered for sale and sold by Nike in the United States as of the date of this Stipulation.  Based on this understanding, adidas agrees:  (a) to release any claims for damages regarding past sales in the United States of the Counterclaim Products; and (b) because such claims have become moot, to release any claims for injunctive relief regarding past sales in the United States of the Counterclaim Products.  adidas further agrees that, so long as Nike does not offer for sale or sell the Counterclaim Products in the United States, adidas will not bring a claim against Nike asserting trademark infringement or dilution of the Three-Stripe Mark in the United States regarding such products.

      4.    With respect to any of the Previously Disputed Products, the Excepted Catalog Products, or the Requested Sample Products previously but not currently offered for sale or sold in the United States as of the date of this Stipulation, adidas: (a) hereby releases, acquits, and discharges Nike for any liability to adidas for infringement or dilution of the Three-Stripe Mark in the United States arising from Nike's offer for sale or sale of such products to date in the United States; (b) agrees not to amend its counterclaim to assert any claims regarding past sales of such products; and ©) so long as Nike does not offer for sale or sell such Previously Disputed Products, the Excepted Catalog Products, or the Requested Sample Products in the United States, adidas will

5 - AMENDED OPINION AND ORDER

> > not bring a claim against Nike asserting trademark infringement or dilution of the Three-Stripe Mark in the United States regarding such products.

Finally, adidas also stipulated to the following:

> adidas agrees that if it becomes aware of a product being sold or offered for sale by Nike in the United States that adidas believes infringes or dilutes one or more of adidas's trademarks, adidas will contact Nike in an effort to resolve the dispute informally. adidas agrees that it will not initiate a civil action in the United States against Nike for infringement or dilution of adidas's trademarks until at least fifteen (15) days after adidas first contacts Nike or until the parties earlier agree that such informal negotiations have failed; provided that Nike also agrees not to pursue declaratory relief during the negotiation period.

On September 18, 2006, adidas also filed a Renewed Motion to Dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## **STANDARDS**

Generally when considering a motion to dismiss, a court must limit its review to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998).

In *Parrino v. FHP, Inc.*, however, the court held "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the

plaintiff's complaint necessarily relies."  146 F.3d 699, 706 (9th Cir. 1998).  In addition, the court may review evidence, when necessary, to rule on a challenge to subject-matter jurisdiction.  *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

## DISCUSSION

adidas moves to dismiss this matter for lack of subject-matter jurisdiction on the ground that adidas's Stipulation moots Plaintiff's Complaint for declaratory judgment and adidas's Counterclaims.

### I. Declaratory Judgment Standard.

The Declaratory Judgment Act provides:  "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  The purpose of a declaratory-judgment action is to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side."  *BP Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993).

The Act parallels Article III of the United States Constitution, which "requires an actual controversy between the

7 - AMENDED OPINION AND ORDER

parties before a federal court may exercise jurisdiction over an action for a declaratory judgment." *EMC Corp. v. Norand Corp*,. 89 F.3d 807, 810 (Fed. Cir. 1996). Whether there is an "actual controversy" generally depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citation omitted). "'[W]hen there is no actual controversy, the court has no discretion to decide the case.'" *Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005)(quoting *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991)).

The Federal Circuit has developed a two-part inquiry to determine whether there is an actual controversy in actions in which a party seeks a declaration regarding trademark or patent infringement. *Teva*, 395 F.3d at 1332. For an actual controversy to exist, there must be:

> (1) an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and
> (2) present activity by the declaratory judgment plaintiff which would constitute infringement, or concrete steps taken with the intent to conduct such activity.

*Id.* at 1332 (citing *Gen-Prove, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1380 (Fed. Cir. 2004)). *See also E. & J. Gallo Winery v. Pernod Ricard USA, LLC*, No. 1:06-CV-00823 OWW-SMS, 2006 WL

8 - AMENDED OPINION AND ORDER

2849830, at *6 (E.D. Cal. Oct. 5, 2006)(applying test in a declaratory action involving trademark infringement).  The test is objective and "focuses on whether [the defendant's] conduct rose to a level sufficient to indicate an intent to enforce its [trademark]."  *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed. Cir. 1992)(citation omitted).

An "'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'"  *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1056 (Fed. Cir. 1995)(quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).  When "this condition is not met, the case has become moot, and its resolution is no longer within our constitutional purview."  *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005)(citation omitted).

**II.  adidas's Stipulation Renders this Action Moot.**

As noted, adidas stipulated to "release[], acquit[], and discharge[] Nike" for any liability to adidas for infringement or dilution of the Three-Stripe Mark in the United States arising from Nike's offer for sale or sale of (1) two-stripe products that Nike previously sold, (2) the Tempo Track Pant depicted in the Complaint, and (3) all previously disputed products.  adidas also stipulated to a covenant not to sue Nike in the United States for trademark infringement or dilution of the Three-Stripe Mark based on any of the two-stripe products for sale by Nike as

9 - AMENDED OPINION AND ORDER

of the date of the Stipulation.  Thus, adidas contends the Stipulation moots this matter because it deprives Nike of any "reasonable apprehension . . . that it will face an infringement suit."  *See Teva,* 395 F.3d at 1332.

To support its contention, adidas relies on *Super Sack*.  In that case, the plaintiff sued the defendant for patent infringement.  57 F.3d at 1055.  The defendant counterclaimed for declaratory judgment on the issue of infringement.  *Id*.  Ultimately, the plaintiff filed a motion to dismiss for lack of jurisdiction in which it promised that it would "unconditionally agree not to sue [the defendant] for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by [the defendant]."  *Id*.  The plaintiff contended its promise should remove any apprehension by the defendant that it would face claims of infringement and, therefore, eliminated any actual case or controversy.  *Id*.  Although the plaintiff did not concede claims of infringement, it unconditionally promised not to sue the defendant for infringement "with respect to any products currently manufactured or sold by [the defendant]."  *Id*.  The district court granted the plaintiff's motion to dismiss, and the defendant appealed.  The Federal Circuit affirmed the district court and rejected the defendant's contention that the plaintiff's "promise not to sue fail[ed] to eliminate the controversy . . . because the promise

10 - AMENDED OPINION AND ORDER

[did] not cover products that [the defendant] may make, sell, or use in the future." *Id*. at 1059. As the Federal Circuit explained, determining justiciability is a two-step process in which the party seeking a declaration must prove

> (1) an explicit threat or other action . . . which creates a *reasonable* apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit; and (2) *present* activity which would constitute infringement, or concrete steps taken with the intent to conduct such activity.

*Id*. at 1058 (emphasis in original). The Federal Circuit noted the plaintiff's covenant not to sue based on past or present products was sufficient to divest the court of jurisdiction "because [the defendant] can have no reasonable apprehension that it will face an infringement suit . . . with respect to past and present products." *Id*. at 1059. With respect to the defendant's contention that the covenant not to sue did not apply to the defendant's future products, the Federal Circuit reasoned:

> [A]s our cases have made clear, the second part of our test of declaratory justiciability respecting patent rights requires that the putative infringer's "*present* activity" place it at risk of infringement liability. [The defendant] has . . . never contended that it . . . plan[s] to make a new product that may later be said to infringe. And [the plaintiff's] promise not to sue renders any past or present acts of infringement that [the defendant] may or may not have committed irrelevant to the question whether a justiciable controversy remains. The residual possibility of a future infringement suit based on [the defendant's] future acts is simply too speculative a basis for jurisdiction over [the defendant's] counterclaim for declaratory judgments of

11 - AMENDED OPINION AND ORDER

>    invalidity.  The only proper course for the trial
>    court was to dismiss the case for lack of
>    jurisdiction, as it did.

*Id*. at 1059-60 (emphasis in original).

Similarly in *Gator.com*, the plaintiff filed a declaratory-judgment action in which it requested the court to declare that the plaintiff's product did not infringe or dilute the defendant's trademark.  398 F.2d at 1127.  The district court granted the defendant's motion to dismiss on the ground that the court lacked personal jurisdiction over the defendant.  *Id*. at 1127-28.  After the plaintiff appealed, the parties entered into a settlement agreement in which the plaintiff agreed to discontinue permanently the use of its "pop-ups" on the defendant's website and the defendant released the plaintiff from all claims arising from the plaintiff's prior use of "pop-ups" on the website.  *Id*. at 1128.  The Ninth Circuit held the settlement rendered the appeal moot because the defendant released the plaintiff from all liability associated with the plaintiff's prior use of the product and the plaintiff agreed to cease the activity at issue.  *Id*. at 1131.

As noted, adidas has stipulated it would not sue Nike and released Nike from liability for the two-stripe products that Nike sold in the past or that it presently sells.  Nike, however, contends adidas's Stipulation is not sufficient to remove Nike's apprehension that it will face an infringement suit because the

12 - AMENDED OPINION AND ORDER

Stipulation does not remove all risk of liability if Nike decided to re-release old two-stripe products or to produce products in the future that adidas might characterize as infringing its trademark.  As in *Super Sack*, however, Nike's concerns regarding theoretical future products or re-release of past products do not constitute any "present activity" that places Nike at risk of infringement liability.

Nike also contends adidas's Stipulation is insufficient to remove Nike's apprehension because the Stipulation does not ensure Nike will "obtain relief from harassment by adidas over the use of striped designs."  Although the Court understands Nike's desire to restrict adidas's future competitive strategies, it is not appropriate for the Court to speculate as to whether future designs or patterns created by Nike might infringe adidas's trademark.  The Court only has the authority to address current cases or controversies, and already has concluded adidas's Stipulation is sufficient to remove any reasonable apprehension by Nike of being at risk of infringement liability based on its "present activity."  Moreover, adidas is estopped from taking action inconsistent with its Stipulation now on file in the Court records.  Thus, Nike is able to ensure that adidas's promises are not, in fact, "hollow."  The Court, therefore, concludes adidas's Stipulation moots Plaintiff's request for declaratory judgment and adidas's Counterclaims.

13 - AMENDED OPINION AND ORDER

In its Response to Defendant's Motion to Dismiss, Nike states it intends to file an amended complaint in which it would narrow its claims for declaratory relief to stripe designs depicted on "representative sample" products.  In light of the Court's conclusion that adidas's Stipulation is sufficient to remove any reasonable apprehension by Nike of being at risk of infringement liability based on any products Nike is currently selling, however, an amended complaint would be futile.  *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997)(A proposed amendment to a complaint is futile "if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim.").  The Court, therefore, denies Nike leave to file an amended complaint at this stage.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Renewed Motion to Dismiss (#87).

The Court will schedule a status conference shortly to

14 - AMENDED OPINION AND ORDER

determine whether there are any remaining issues to be resolved.

IT IS SO ORDERED.

DATED this 14th day of December, 2006.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

15 - AMENDED OPINION AND ORDER